# STATE OF MICHIGAN

# COURT OF APPEALS

VIDYAARTHY C. RAMAMOORTHI,

     Plaintiff-Appellee,

v

CHINNAIAH RAMAMOORTHI,

     Defendant-Appellant.

PUBLISHED
March 8, 2018
9:10 a.m.

No. 336845
Oakland Circuit Court
LC No. 2016-840889-DM

Before: TALBOT, C.J., and BECKERING and CAMERON, JJ.

CAMERON, J.

Defendant appeals as of right the trial court's judgment of divorce. This case involves parties who, after living in Michigan for several years, returned to their native country of India in 2014 with their three children. In 2016, plaintiff returned to Michigan and filed for divorce. We affirm in part, reverse and vacate in part, and remand for further proceedings.

The parties were married in India on June 8, 2000, and then moved to Michigan a month later. In 2004, they purchased a home in Sterling Heights. Defendant became a United States citizen in 2008. While living in the United States, the parties had three children together. In May 2014, defendant took the children to India, while plaintiff temporarily remained in Michigan to complete paperwork necessary to become a United States citizen. Later that month, plaintiff joined the children in India, but defendant returned to the United States to continue his employment. Plaintiff briefly returned to Michigan in August 2014, became a United States citizen, and then returned to India. Once plaintiff returned to India, defendant traveled back to the United States until November 2014. At that time, plaintiff expressed her desire to return to the United States with the children because she was not happy in India. Defendant said that they could return to live in the United States in five to six months. Defendant returned to the United States for work, but by November 2015, plaintiff and the children were still living in India. On November 29, 2015, defendant returned to India, the parties got into a fight, and defendant physically beat plaintiff for nearly a week while family members watched but did not intervene. Defendant took all of plaintiff's jewelry and her passport from their lockbox. Thereafter, plaintiff was locked in her apartment and defendant's brother administered medication for her injuries. Defendant left the children with his sister while he traveled back to the United States for work. In December 2015, plaintiff was able to leave the apartment and went to the police. The police escorted her to the home of defendant's sister, and plaintiff was able to see her children. When defendant learned that plaintiff went to the police, he immediately traveled back

-1-

to India, at which time he and members of his family forced plaintiff to sign away her rights to all the marital property. Plaintiff was eventually able to obtain an emergency passport from the American consulate, and on March 22, 2016, she returned to the United States.

Plaintiff claims that she never intended to remain in India, despite her lengthy stay from 2014 to 2016, and that defendant had promised that she and the children could return to Michigan if they did not like India. According to plaintiff, defendant would not allow her and the children to return to Michigan. She claimed that defendant and his family members physically abused her and prevented her from leaving. Plaintiff also claimed that she was not able to return to the United States on her own because defendant controlled all of the family's assets and finances.

On April 5, 2016, plaintiff filed a complaint for divorce in Oakland County. It is undisputed that the children were still living in India at this time, and that they had not lived in the United States since May 2014. The children remained with defendant in India throughout the pendency of this case, despite the trial court's orders that they were to be returned to plaintiff's custody in Michigan.

Defendant, who remained in India, challenged the trial court's subject-matter jurisdiction on the ground that plaintiff failed to meet the statutory residency requirements, MCL 552.9(1), before bringing this divorce action in Michigan. Defendant also argued that the trial court did not have jurisdiction to make a custody determination under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), MCL 722.1101 *et seq.*, because Michigan was not the children's home state under the act. Alternatively, defendant argued that the trial court should decline to exercise jurisdiction over the proceeding under the doctrine of forum non conveniens. The trial court rejected each of defendant's arguments and denied his motion to dismiss.

Defendant later moved for summary disposition under MCR 2.116(C)(6), arguing that the trial court should dismiss the action under the doctrine of comity because defendant had commenced a divorce action in India before plaintiff filed her complaint for divorce in Oakland County. The trial court denied defendant's motion, ruling that it was not timely filed, and that the doctrine of comity was not applicable in any event because defendant was not attempting to enforce a foreign judgment.

In January 2017, the trial court granted plaintiff a default judgment of divorce. In relevant part, the judgment awarded plaintiff sole custody of the parties' children, who were still living in India.

On appeal, defendant first argues that the trial court erred in denying his motion to dismiss on the ground that the trial court lacked subject-matter jurisdiction over plaintiff's divorce action because plaintiff did not meet the statutory residency requirements under MCL 552.9(1) before filing her complaint for divorce. We disagree.

In *Kar v Nanda*, 291 Mich App 284, 286-287; 805 NW2d 609 (2011), this Court stated:

> The question whether a court has subject-matter jurisdiction is a question of law that we review de novo. Issues of statutory construction are also questions

of law that are reviewed de novo. Whether the requirements of MCL 552.9(1) have been satisfied is a question of fact. Questions of domicile and intent are also questions of fact. We review factual findings for clear error. A finding is clearly erroneous if, on all the evidence, the Court is left with the definite and firm conviction that a mistake has been made. [Quotation marks and citations omitted.]

MCL 552.9(1) provides:

A judgment of divorce shall not be granted by a court in this state in an action for divorce unless the complainant or defendant has resided in this state for 180 days immediately preceding the filing of the complaint and, except as otherwise provided in subsection (2), the complainant or defendant has resided in the county in which the complaint is filed for 10 days immediately preceding the filing of the complaint.

"The statutory residency requirements are jurisdictional, and a divorce is void if it does not comply with the residency requirements." *Kar*, 291 Mich App at 287. "Residence" is "a place of abode accompanied with the intention to remain." *Leader v Leader*, 73 Mich App 276, 280; 251 NW2d 288 (1977). While "the ordinary, common meaning of the term 'reside' does not require an intent to remain permanently or indefinitely," it does require "an intent to remain." *Kar*, 291 Mich App at 288-294.

It is undisputed that plaintiff was not physically present in Michigan for the relevant periods preceding the filing of her complaint. However, MCL 552.9(1) does not require a party's "continuing physical presence" in the state for the entirety of the state residency period. *Berger v Berger*, 277 Mich App 700, 703; 747 NW2d 336 (2008); *Leader*, 73 Mich App at 283. "[D]etermining residence or domicile requires a multi-factor analysis, but the preeminent factor is the person's intent." *Berger*, 277 Mich App at 704. Germane to the instant case, "an established domicile is not destroyed by a temporary absence if the person has no intention of changing his or her domicile." *Id*.

In *Leader*, the plaintiff and the defendant "had lived in Michigan for a substantial period of time." *Leader*, 73 Mich App at 278. In October 1975, the plaintiff left Michigan and went to Kentucky with the defendant until January 1976. *Id*. The plaintiff testified that she went to Kentucky at the defendant's request to attempt reconciliation, but had no intent of staying in Kentucky, or anywhere else with the defendant, unless the couple reconciled. *Id*. Even though it was clear that the reconciliation would be unsuccessful, the plaintiff stayed in Kentucky because she did not want to leave her children without a mother and because the defendant was threatening her. *Id*. This Court concluded that, based on the plaintiff's intent, her residence remained in Michigan even though she was physically present in Kentucky for most of the jurisdictional period. *Id*. at 278, 280.

We conclude that *Leader* is instructive to deciding the instant case. In this case, plaintiff moved to India at the urging, if not insistence, of defendant for a "test period," but she intended to return to Michigan. The trial court credited plaintiff's testimony that she wanted to return to Michigan almost immediately because the "test period" was not working, but she was not able to

-3-

return because defendant controlled all of the parties' finances. After going to India, plaintiff returned to the United States for her citizenship proceedings, which according to plaintiff meant that she was effectively giving up her Indian citizenship. When plaintiff returned to India to bring the children back to Michigan, defendant arrived in India, physically assaulted her, and forcibly took all of her gold jewelry and important documents, including her passport, her visa to be in India, her United States naturalization papers, and her educational documents. Plaintiff also maintained that defendant forcefully removed the children from her custody and refused to return them. According to plaintiff, after she filed a domestic violence claim with the Indian police, defendant forced her to sign away all of her rights to the parties' property. He also rented out their Michigan home to prevent her from returning there. When plaintiff managed to return to Michigan, defendant tried to usurp her divorce filing, refused to come to Michigan to participate in the instant proceeding, and repeatedly defied the trial court's orders. The trial court found plaintiff's testimony regarding defendant's actions and her intent to reside in Michigan to be credible. In light of the foregoing, and giving deference to the trial court's finding of facts, we conclude that the trial court did not clearly err in finding that plaintiff did not intend to relinquish her prior Michigan residency. Accordingly, the trial court properly found that plaintiff satisfied the residency requirements of MCL 552.9(1), thus providing the trial court with subject-matter jurisdiction over the divorce proceeding. *Berger*, 277 Mich App at 703-704.

Defendant seems to argue that Michigan was required to relinquish jurisdiction over the divorce proceeding because India was the children's home state under the UCCJEA. As further discussed below, we agree with defendant that the trial court lacked jurisdiction under the UCCJEA to decide issues relating to the children's custody. We disagree, however, that the trial court therefore lacked jurisdiction to resolve non-custody matters.

MCR 3.211(C) does not require that a divorce judgment include a custody determination in the same way that MCR 3.211(B) requires, for example, that a divorce judgment must include a determination of the property rights of the parties. See *Yeo v Yeo*, 214 Mich App 598; 543 NW2d 62 (1995). Defendant has presented no authority that prohibits a trial court from entering a divorce judgment without making a custody determination, or from otherwise bifurcating divorce and custody proceedings. Moreover, MCL 722.1207 specifically provides for bifurcation of a divorce proceeding and a custody proceeding under the UCCJEA.[1] Therefore, the fact that the trial court lacked jurisdiction to make a custody determination did not prevent the trial court from entering an otherwise valid divorce judgment concerning non-custody matters.

As indicated, however, we agree with defendant that the trial court lacked jurisdiction under the UCCJEA to make a custody determination because India, and not Michigan, was the children's "home state" under the act.

---

[1] MCL 722.1207(4) states:

> A court of this state may decline to exercise jurisdiction under this act if a child-custody determination is incidental to an action for divorce or another proceeding while still retaining jurisdiction over the divorce or other proceeding.

Section 201 of the UCCJEA, MCL 722.1201, provides, in pertinent part:

(1) Except as otherwise provided in [MCL 722.1204] a court of this state has jurisdiction to make an initial child-custody determination only in the following situations:

(a) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within 6 months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state.

(b) A court of another state does not have jurisdiction under subdivision (a), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under section 207 or 208, and the court finds both of the following:

(*i*) The child and the child's parents, or the child and at least 1 parent or a person acting as a parent, have a significant connection with this state other than mere physical presence.

(*ii*) Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships.

(c) All courts having jurisdiction under subdivision (a) or (b) have declined to exercise jurisdiction on the grounds that a court of this state is the more appropriate forum to determine the custody of the child under section 207 or 208.

(d) No court of another state would have jurisdiction under subdivision (a), (b), or (c).

(2) Subsection (1) is the exclusive jurisdictional basis for making a child-custody determination by a court of this state.

MCL 722.1102(g) defines a child's "home state" as

the state in which a child *lived* with a parent or a person acting as a parent for at least 6 consecutive months immediately before the commencement of a child-custody proceeding. In the case of a child less than 6 months of age, the term means the state in which the child lived from birth with a parent or person acting as a parent. A period of temporary absence of a parent or person acting as a parent is included as part of the period. [Emphasis added.]

MCL 722.1204(1) provides for an exception for emergency jurisdiction under certain circumstances, but it requires that a child be "present in this state" for it to apply. Because the children were not present in Michigan at the time this action commenced, it is not applicable.

Under MCL 722.1201, the trial court was required to find that it had jurisdiction under the UCCJEA in order to make a custody determination.[2] To exercise jurisdiction, the trial court was required to find either that Michigan is a home state, that another home state has decided not to exercise jurisdiction, or that no other home state exists. Defendant is correct that India may qualify as a home state under MCL 722.1105, which provides:

> (1) A court of this state shall treat a foreign country as a state of the United States for the purposes of applying [MCL 722.1101 *et seq.* and 722.1201 *et seq.*]

> (2) Except as otherwise provided in subsection (3), a child-custody determination made in a foreign country under factual circumstances in substantial conformity with the jurisdictional standards of this act must be recognized and enforced under [MCL 722.1301 *et seq.*].

> (3) A court of this state need not apply this act if the child-custody law of a foreign country violates fundamental principles of human rights.[3]

Thus, to exercise jurisdiction, the trial court was required to find that Michigan was a home state under MCL 722.1201(1), or that despite the children's presence in India, it should not be considered a home state. Because the children had lived in India "for at least 6 consecutive months immediately before the commencement of [this] proceeding," India, and not Michigan, qualifies as the children's home state under MCL 722.1102(g). There was no evidence that India was unwilling to exercise jurisdiction over the children.

Plaintiff argues that because the children, like herself, were essentially forced to remain in India, their Michigan residency continued, and therefore, Michigan may qualify as their home state. Plaintiff argues that the same analysis that supports her continued Michigan residency also supports a finding that Michigan was the children's home state. Essentially, plaintiff argues that the phrase "lived with" in MCL 722.1102(g) is synonymous with "residency" or "domicile" for purposes of the UCCJEA. We cannot agree with this argument.

We note that prior decisions from this Court appear to have used the terms "reside" and "live with" interchangeably. See *Nash v Salter*, 280 Mich App 104, 106-107, 109-113; 760 NW2d 612 (2008); *White v Harrison-White*, 280 Mich App 383, 392-395; 760 NW2d 691 (2008); *Fisher v Belcher*, 269 Mich App 247, 260-262; 713 NW2d 6 (2005). However, none of these decisions involved an actual question concerning the extent to which these terms are to be reconciled, and none of them purport to establish a rule of law that "live with" in MCL 722.1102(g) is synonymous with residency or domicile.

---

[2] While MCL 722.1201 applies only to initial determinations, MCL 722.1203 establishes similar requirements for custody modifications.

[3] As discussed by the trial court, no party has argued that the court was not required to apply the UCCJEA under MCL 722.1105(3).

"[D]ecisions from other states may guide this Court when interpreting uniform acts." *White*, 280 Mich App at 387. In *Markle v Dass*, 300 Ga 702; 797 SE2d 868 (2017), the Georgia Supreme Court rejected the argument that a "home state" under the UCCJEA is synonymous with concepts of residency or domicile. The Georgia court stated:

> It appears that the superior court declared Georgia to be the "home state" of the child based upon its finding that, prior to August 2015, the child's residence—and the custodial mother's residence—was in Georgia, and that the court then determined that the child's presence in New Mexico was a "temporary absence" from that residence. But, that is not an analysis that the statutory definition of "home state" permits. As has been noted,

>> "home state" is not synonymous with the "residence or domicile of the parent having legal custody." [Cit.] Rather, the term "lived" in the definition of "home state" refers to the state where the child is physically present "without regard to legal residence." [Cits.] "If the General Assembly had intended that jurisdiction be based upon legal residence or domicile, it would undoubtedly have used these technical terms." [Cit.]

> *Slay v Calhoun*, 332 Ga App 335, 341 (2), 772 S E 2d 425 (2015).

> By its plain language, OCGA § 19-9-41 (7) defines "home state" in terms of current presence, and declares a time frame for that presence to have the necessary legal effect, i.e., six months, or the child's life, if the child is less than six months of age. It is that six-month period that OCGA § 19-9-41 (7) refers to when it speaks of a temporary absence as "part of the period." OCGA § 19-9-41 (7) looks to the present, and then backward six months; it does not look to legal residence or domicile at some point in the past, and then look forward. [*Markle*, 300 Ga at 705-706.]

We find this reasoning persuasive, particularly considering the language in MCL 722.1204, requiring a child's presence in the state for an emergency proceeding. That is, we agree that the focus of the UCCJEA concerns a child's actual presence, not his or her intent to remain. In sum, because it is undisputed that the children had "lived with" a parent in India for more than six consecutive months—indeed, almost two years—immediately before plaintiff filed this action, India, and not Michigan, qualifies as the children's home state under the UCCJEA. Therefore, regardless of whether the children properly could be considered residents of Michigan because they intended to return there, the trial court erred when it found that it had jurisdiction over the parties' custody dispute under the UCCJEA.

Defendant also argues that the trial court should have applied the doctrine of forum non conveniens to dismiss the entire proceeding. In light of our conclusion that the trial court lacked jurisdiction under the UCCJEA to make a custody determination, it is only necessary to address this issue as it relates to non-custody matters. Trial courts have discretion to decline jurisdiction when the convenience of the parties and the ends of justice "would be better served if action were brought and tried in another forum." *Hernandez v Ford Motor Co*, 280 Mich App 545,

551-552; 760 NW2d 751 (2008) (quotations marks and citation omitted). We review a trial court's decision whether to apply the doctrine of forum non conveniens for an abuse of discretion. *Hare v Starr Commonwealth Corp*, 291 Mich App 206, 213-214; 813 NW2d 752 (2011).

Although a plaintiff's choice of forum is generally granted deference, *Manfredi v Johnson Controls, Inc*, 194 Mich App 519, 523; 487 NW2d 475 (1992), trial "courts are charged to consider the plaintiff's choice of forum and to weigh carefully the relative advantages and disadvantages of jurisdiction and the ease of and obstacles to a fair trial in this state." *Cray v Gen Motors Corp*, 389 Mich 382, 396; 207 NW2d 393 (1973). "After a party moves for dismissal on the basis of forum non conveniens, the court must consider two things: (1) whether the forum is inconvenient and (2) whether a more appropriate forum exists." *Lease Acceptance Corp v Adams*, 272 Mich App 209, 226; 724 NW2d 724 (2006). In making this determination, trial courts should consider the private interest of the litigants, matters of public interest, and the defendant's promptness in making the request. *Id*. at 226-227; *Cray*, 389 Mich at 395-396.

Defendant argues that the trial court should have declined to exercise jurisdiction over this divorce matter because he and the children were residing in India, important witnesses resided in India, plaintiff could return to India, and India had jurisdiction to decide the custody of the children under the UCCJEA. On balance, we are not persuaded that defendant's remaining contentions demonstrate that dismissal was required under the doctrine of forum non conveniens. Notwithstanding connections with India, the trial court observed that most of the parties' finances were located in Michigan and that litigating the case in Michigan would not be unduly inconvenient because witnesses could testify in ways other than in person. Defendant has not provided any support for his position that witnesses would refuse to testify. Moreover, given the evidence of defendant's and his family's past mistreatment of plaintiff, it was reasonable for the trial court to find that she would be in danger of physical harm if she returned to India. However, the trial court's finding that Michigan was the more convenient forum was also influenced by its erroneous ruling that it had jurisdiction to decide the children's custody under the UCCJEA. Because we cannot determine if the trial court would have declined to exercise jurisdiction over non-custody matters if it lacked jurisdiction to make a custody determination, we remand for reconsideration of this issue in light of our decision under the UCCJEA.

Defendant also argues that the trial court erred in denying his motion for summary disposition under MCR 2.116(C)(6), where he had first commenced an action for divorce in India before plaintiff filed her complaint in Michigan. MCR 2.116(C)(6) provides that a claim can be dismissed when "[a]nother action has been initiated between the same parties involving the same claim." However, a motion under subrule (C)(6) "must be raised in a party's responsive pleading, unless the grounds are stated in a motion filed under this rule prior to the party's first responsive pleading." MCR 2.116(D)(2). It is undisputed that defendant did not raise this issue in his responsive pleading, or by motion before filing his responsive pleading. Therefore, the trial court properly denied defendant's motion under MCR 2.116(C)(6) on the ground that it was not timely filed.

Defendant also argues that the trial court should have dismissed the divorce proceeding under the doctrine of comity. This doctrine concerns the extent to which a trial court should give effect to a foreign judgment. *Gaudreau v Kelly*, 298 Mich App 148, 153; 826 NW2d 164 (2012).

We agree with the trial court that this doctrine was not applicable because no foreign judgment existed at the time the trial court made its decision.

In sum, we affirm the trial court's decision regarding subject-matter jurisdiction over this divorce action, but we reverse the trial court's decision regarding jurisdiction over the children under the UCCJEA and vacate the portion of the trial court's judgment pertaining to child custody, and remand for reconsideration of the forum non conveniens issue consistent with this opinion. On remand, the trial court shall determine whether India is the more appropriate forum to determine this divorce action.

Affirmed in part, reversed and vacated in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Thomas C. Cameron
/s/ Michael J. Talbot
/s/ Jane M. Beckering