*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

REBECCA KAY RICHARDSON,

UNPUBLISHED
March 13, 2026
11:00 AM

Plaintiff-Appellant,

v

No. 377261
Wayne Circuit Court
Family Division
LC No. 25-108062-DC

CODY JAMES SNIPES,

Defendant-Appellee.

Before: WALLACE, P.J., and GARRETT and ACKERMAN, JJ.

PER CURIAM.

Plaintiff appeals as of right the August 26, 2025 order that dismissed her complaint seeking, among other things, sole legal and physical custody of GRR. We reverse.

## I. BACKGROUND

This case arises out of a dispute over the custody of GRR. On June 16, 2025, Department of Health and Human Services (DHHS) initiated child protective proceedings concerning GRR in Wayne County, alleging that plaintiff orchestrated an elaborate scheme to mislead police and frame others for her actions by faking GRR's death, altering DNA testing, creating fake email accounts in defendant's name, and sending threatening emails to both herself and an Oakland Circuit Court judge. On June 23, 2025, defendant filed a complaint in Vernon Parish, Louisiana, requesting, among other things, emergency ex parte relief in the form of sole legal and physical custody of GRR. Defendant's request was granted that day, and a hearing was scheduled for July 28, 2025. One week later—on June 30, 2025—plaintiff filed an identical request in the trial court. Her request was likewise granted immediately.

Shortly after the Louisiana court granted defendant temporary custody of GRR, plaintiff allegedly began to ignore phone calls from Children's Protective Services (CPS) investigators and fled to Otsego County, Michigan.[1] At an emergency child protective hearing held in Otsego

---

[1] Plaintiff alleges to have been visiting a relative in Otsego County for the Fourth of July holiday.

Circuit Court on July 3, 2025, GRR was removed from plaintiff's care, and defendant was awarded temporary custody. GRR has resided in Louisiana ever since.

At the July 28, 2025 hearing on defendant's ex parte motion for temporary custody, the Louisiana court ruled that Louisiana would accept temporary emergency jurisdiction, granted sole custody of GRR to defendant, and terminated plaintiff's custodial rights until further notice. At the August 26, 2025 hearing on plaintiff's parallel ex parte motion, the trial court declined to exercise jurisdiction, citing Louisiana's prior exercise of jurisdiction as the reason. However, in the order that followed, the trial court offered the following explanation:

> The [c]ourt finds that [p]laintiff's ex parte motion incorrectly recited incomplete facts regarding jurisdiction of the minor child. The [c]ourt took testimony on the record on August 26, 2025 from [d]efendant/[f]ather and CPS Investigator Octavia Johnson. Defendant/[f]ather testified that he filed a pending paternity case on September 20, 2024 in the Louisiana Circuit [sic: District] Court. Moreover, the CPS Investigator testified that CPS substantiated very serious allegations against [p]laintiff/[m]other and implemented a safety plan in July 2025. The safety plan places the minor child with [d]efendant/[f]ather in the State of Louisiana. For this reason, this case is dismissed without prejudice.

## II. ANALYSIS

On appeal, plaintiff argues that a child's initial custody determination must take place in the child's home state unless the home state declines to exercise home-state jurisdiction because another state would be a more appropriate forum. However, the trial court made no such findings. Therefore, this Court should reverse and remand for proper determinations of jurisdiction and related issues pursuant to the Uniform Child-Custody Jurisdiction and Enforcement Act, MCL 722.1101 *et seq.* (UCCJEA). We agree.

> We review de novo whether the circuit court has jurisdiction under the UCCJEA. Even when a court can exercise jurisdiction under the UCCJEA, its decision to do so is reviewed for an abuse of discretion. The court abuses its discretion when its decision falls outside the range of principled outcomes. This Court reviews for clear legal error the trial court's application of the law. The trial court has committed clear legal error if it erred in its choice, interpretation, or application of the law. This Court reviews de novo issues of statutory construction. [*Nock v Miranda-Bermudez*, 347 Mich App 623, 627; 16 NW3d 522 (2023) (citations omitted).]

MCL 722.1201(1) and MCL 722.1204 provide "the exclusive jurisdictional bas[es] for making a child-custody determination by a court of this state." MCL 722.1201(2). See also *Nock*, 347 Mich App at 628. Accord La Stat Ann 13:1813(B). A "child-custody determination" is defined as "a judgment, decree, or other court order providing for legal custody, physical custody, or parenting time with respect to a child. Child-custody determination includes a permanent, temporary, initial, and modification order." MCL 722.1102(c). See also *In re Bibi Guardianship*, 315 Mich App 323, 330; 890 NW2d 387 (2016). Accord La Stat Ann 13:1802(3). Under MCL 722.1202, a court that has made a child-custody determination consistent with §§ 201 or 204 has

exclusive, continuing jurisdiction over the child-custody determination until certain conditions occur.[2] *Veneskey v Sulier*, 338 Mich App 539, 553-554; 980 NW2d 551 (2021). Accord La Stat Ann 13:1814.

## A. EXERCISING JURISDICTION UNDER § 201: HOME-STATE JURISDICTION

MCL 722.1201 states:

(1) Except as otherwise provided in section 204, a court of this state has jurisdiction to make an initial child-custody determination only in the following situations:

(a) *This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within 6 months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state.*

(b) A court of another state does not have jurisdiction under subdivision (a), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under section 207 or 208, and the court finds both of the following:

(*i*) The child and the child's parents, or the child and at least 1 parent or a person acting as a parent, have a significant connection with this state other than mere physical presence.

(*ii*) Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships.

(c) *All courts having jurisdiction under subdivision (a) or (b) have declined to exercise jurisdiction on the grounds that a court of this state is the more appropriate forum to determine the custody of the child under section 207 or 208.*

(d) No court of another state would have jurisdiction under subdivision (a), (b), or (c).

(2) Subsection (1) is the exclusive jurisdictional basis for making a child-custody determination by a court of this state.

---

[2] Section 202 also provides that § 203 may be a basis for exclusive, continuing jurisdiction over a child-custody determination. MCL 722.1202(1). However, § 203 pertains only to the modification of an existing out-of-state child-custody determination and is therefore not relevant to the issues presented on appeal.

(3) Physical presence of, or personal jurisdiction over, a party or a child is neither necessary nor sufficient to make a child-custody determination. [Emphasis added. See also *Veneskey*, 338 Mich App at 545. Accord La Stat Ann 13:1813.]

A child's "home state" is defined by the UCCJEA as "the state in which a child lived with a parent . . . for at least 6 consecutive months immediately before the commencement of a child-custody proceeding." MCL 722.1102(g). See also *Veneskey*, 338 Mich App at 546. Accord La Stat Ann 13:1802(7)(a).

Before defendant was granted custody pursuant to the child protective proceedings in Otsego on July 3, 2025, GRR had only ever resided in Michigan. She has resided in Louisiana since early July 2025. Because no child-custody proceedings concerning GRR were commenced after her arrival in Louisiana, Michigan is considered GRR's home state under the UCCJEA. Therefore, unless otherwise provided by § 204, only Michigan could have exercised exclusive, continuing jurisdiction at the time of the proceedings leading to this appeal.

## B. EXERCISING JURISDICTION UNDER § 204: TEMPORARY EMERGENCY JURISDICTION

Under MCL 722.1204(1), a court has temporary emergency jurisdiction "if the child is present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child . . . is subjected to or threatened with mistreatment or abuse." Accord La Stat Ann 13:1816(A). Further, MCL 722.1204(3) obligates courts exercising temporary emergency jurisdiction to specify, upon learning of a previous child-custody determination that is entitled to be enforced under the UCCJEA, "a period of time that the court considers adequate to allow the person seeking an order to obtain an order from the state having jurisdiction under sections 201 to 203." Accord La Stat Ann 13:1816(C). Such an exercise of temporary emergency jurisdiction "remains in effect until an order is obtained from the other state within the period specified or the period expires." MCL 722.1204(3). Accord La Stat Ann 13:1816(C).

However, the jurisdiction exercised under § 204 is for the most part expressly temporary. Section 204 provides only one basis for exclusive, continuing jurisdiction. Subsection (2) provides:

> If there is no previous child-custody determination that is entitled to be enforced under this act and if a child-custody proceeding has not been commenced in a court of a state having jurisdiction under sections 201 to 203, a child-custody determination made under this section remains in effect until an order is obtained from a court of a state having jurisdiction under sections 201 to 203. *If a child-custody proceeding has not been or is not commenced in a court of a state having jurisdiction under sections 201 to 203, a child-custody determination made under this section becomes a final child-custody determination, if that is what the determination provides and this state becomes the home state of the child.* [Emphasis added. Accord La Stat Ann 13:1816(B).]

The Louisiana court's initial order entered on June 23, 2025, was not a valid exercise of temporary emergency jurisdiction under MCL 722.1204(1) because GRR was not present in the

state of Louisiana at that time. *Ramamoorthi v Ramamoorthi*, 323 Mich App 324, 336; 918 NW2d 191 (2018). However, by the time the Louisiana court held its later hearing on defendant's motion for emergency ex parte relief on July 28, 2025, GRR was living in Louisiana with defendant. In addition, concerns about GRR being subjected to mistreatment or abuse should Louisiana decline temporary emergency jurisdiction would have been justifiable in light of the findings in the Otsego child protective proceedings. Although not expressly predicated on La Stat Ann 13:1816—Louisiana's analogue to Michigan's temporary emergency jurisdiction statute, MCL 722.1204—the Louisiana court's exercise of temporary emergency jurisdiction nonetheless appears to have been made consistent with that statute. Indeed, the Louisiana court's July 30, 2025 judgment appears to tailor its language to that statute's requirements by declaring that the court's order "will become final and Louisiana will become the home state if Michigan declines jurisdiction or fails to act within [s]ix (6) months of the signing of this judgment in accordance with [Louisiana's UCCJEA enactment,] R.S. 13:1801 et seq."

However, although the Louisiana court's order effectively provides that it will become a final child-custody determination, exclusive, continuing jurisdiction pursuant to § 204 can only be exercised when "a child-custody proceeding has not been or is not commenced in a court of a state having jurisdiction under sections 201 to 203." MCL 722.1204(2). As of July 28, 2025, child-custody proceedings had already been commenced in Michigan, which had home-state jurisdiction under § 201. Therefore, § 204 could not serve as a basis for Louisiana to exercise exclusive, continuing jurisdiction.

C. DECLINING HOME-STATE JURISDICTION UNDER § 207: INCONVENIENT FORUM

MCL 722.1207 allows a court to decline jurisdiction under certain circumstances. Section 207 provides, in relevant part:

(1) *A court of this state that has jurisdiction under this act to make a child-custody determination may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum*. The issue of inconvenient forum may be raised upon the motion of a party, the court's own motion, or the request of another court.

(2) Before determining whether it is an inconvenient forum, a court of this state shall consider whether it is appropriate for a court of another state to exercise jurisdiction. *For this purpose, the court shall allow the parties to submit information and shall consider all relevant factors*, including all of the following:

(a) Whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child.

(b) The length of time the child has resided outside this state.

(c) The distance between the court in this state and the court in the state that would assume jurisdiction.

(d) The parties' relative financial circumstances.

(e) An agreement by the parties as to which state should assume jurisdiction.

(f) The nature and location of the evidence required to resolve the pending litigation, including the child's testimony.

(g) The ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence.

(h) The familiarity of the court of each state with the facts and issues of the pending litigation. [Emphasis added.]

Because "[t]he use of 'shall' in a statute generally indicates a mandatory and imperative directive,"[3] a court considering whether to decline jurisdiction under § 207 must first allow the parties to submit information relevant to the convenience of the prospective forum, MCL 722.1207(2). Then, the court must consider "all relevant factors" nonexhaustively detailed in subdivisions (a) through (h). See *Cheesman v Williams*, 311 Mich App 147, 158-159; 874 NW2d 385 (2015) (noting that the record failed to indicate that the trial court had considered all of the factors required under MCL 722.1207(2)); *Veneskey*, 338 Mich App at 550 n 7 (noting that "[f]actors (a) through (g) [sic: (h)] are not an exhaustive list").[4]

During the August 26, 2025 hearing following plaintiff's emergency request for ex parte relief, the trial court did not follow the procedures outlined in § 207. Indeed, the trial court did not even mention inconvenience when dismissing plaintiff's case and instead only referred to the fact that Louisiana had already exercised jurisdiction. In the order that followed, the trial court then appears to have abandoned that rationale, declaring that

[t]he [c]ourt finds that [p]laintiff's ex parte motion incorrectly recited incomplete facts regarding jurisdiction of the minor child. The [c]ourt took testimony on the record on August 26, 2025 from [d]efendant/[f]ather and CPS Investigator Octavia Johnson. Defendant/[f]ather testified that he filed a pending paternity case on September 20, 2024 in the Louisiana Circuit [sic: District] Court. Moreover, the CPS Investigator testified that CPS substantiated very serious allegations against [p]laintiff/[m]other and implemented a safety plan in July 2025. The safety plan

---

[3] *Mich Ed Ass'n v Secretary of State (On Rehearing)*, 489 Mich 194, 218; 801 NW2d 35 (2011) (quotation marks and citation omitted).

[4] In *Cheesman*, the trial court entered an order dismissing a child custody action, finding in part that Michigan constituted an inconvenient forum (the minor child lived with the defendant in other states, but visited the plaintiff during summer and school breaks in Michigan). This Court held, *inter alia*, that the applicable remedy to apply when a trial court fails to "make factual findings under MCL 722.1207(2) before it concludes that it is an inconvenient forum," is to remand to the trial court to "take additional evidence and consider each factor under MCL 722.1207(2)." *Cheesman*, 311 Mich App 160-161.

places the minor child with [d]efendant/[f]ather in the State of Louisiana. For this reason, this case is dismissed without prejudice.

Although some of these considerations may be relevant to the forum analysis required by § 207, the principal reason given for dismissing plaintiff's suit was the existence of the safety plan implemented by CPS. However, this fact seems to weigh *against* the conclusion that Louisiana is a more convenient forum because the child protective proceedings referred to by the trial court took place in Michigan, which means that any DHHS employees who might testify with respect to those proceedings will be found here, rather than in Louisiana. But even if the trial court did conduct a more robust convenience analysis at the hearing and in the order, the trial court nonetheless failed to comply with the mandatory procedure set out in § 207, which required the trial court to, among other things, allow the parties to submit information relevant to that determination.

Due to the trial court's failure to create a record reflecting consideration of the nonexhaustive MCL 722.1207(2) factors, we are unable to meaningfully review whether it declined jurisdiction under that statute or whether it abused its discretion. The trial court accordingly erred by failing to apply the statutory framework required to determine whether it could properly decline to exercise jurisdiction pursuant to MCL 722.1207. *Cheesman*, 311 Mich App at 151-152. Assuming the court concluded that it is an inconvenient forum under MCL 722.1207(2) without making the requisite factual findings, this warrants a remand for the trial court to "take additional evidence and consider each factor under MCL 722.1207(2)." *Cheesman*, 311 Mich App at 160-161.

D. DECLINING JURISDICTION UNDER SECTION 208: UNJUSTIFIABLE CONDUCT

Section 208 provides another basis for a court to decline jurisdiction. MCL 722.1208(1) provides, in pertinent part, that a court *must* decline jurisdiction, absent specified exceptions not relevant here, "if a court of this state has jurisdiction under this act *because* a person invoking the court's jurisdiction has engaged in unjustifiable conduct . . . ." (Emphasis added). Put another way, there must be a causal connection between the alleged unjustifiable conduct and the establishment of jurisdiction. *Willis v Willis*, unpublished opinion per curiam of the Court of Appeals, issued October 20, 2022 (Docket No. 361168), p 6.[5]

Defendant alleges a direct causal connection between plaintiff's conduct and the establishment of home-state jurisdiction, insofar as she is alleged to have fled Louisiana shortly

---

[5] We find this non-binding unpublished opinion of this Court to have instructive and persuasive value. *Paris Meadows, LLC v City of Kentwood*, 287 Mich App 136, 145 n 3; 783 NW2d 133 (2010). See also MCR 7.215(C)(1).

after defendant filed a paternity and protective action in that state.[6]  But, as defendant acknowledges, the trial court "did not expressly reference MCL 722.1208."  In addition, the trial court made no factual findings with respect to whether plaintiff's move to Michigan was unjustifiable, noting only that defendant's pleadings contained such an allegation.  For this reason, the factual record is likewise insufficient for § 208 to have served as a basis for the trial court to decline jurisdiction.

Outside of §§ 207 and 208, the trial court had no legal basis to decline jurisdiction. Therefore, the trial court's decision to decline jurisdiction and dismiss plaintiff's case constitutes a legal error.

Reversed and remanded for further proceedings consistent with this opinion and the requirements of the UCCJEA.  We do not retain jurisdiction.

/s/ Randy J. Wallace
/s/ Kristina Robinson Garrett
/s/ Matthew S. Ackerman

---

[6] Defendant further argues that plaintiff engaged in conduct that "further reinforces the propriety of declining jurisdiction."  To be sure, plaintiff was found by the Otsego Circuit Court to have engaged in conduct that is, in a general sense, unjustifiable.  That court found that plaintiff "threatened to kill the child (about 1 year of age), faked the child's death, sent threatening communications to herself while pretending to be the father of the child and impersonated law enforcement to get father in trouble."  On the basis of these findings, the Otsego Circuit Court believed it was necessary to order the immediate removal of GRR from plaintiff's custody.  That case was then transferred to Wayne Circuit Court and ultimately dismissed.  However, this alleged conduct is irrelevant to determining whether the trial court was required to decline jurisdiction under § 208 because the purportedly unjustifiable conduct took place months after Michigan courts could have exercised home-state jurisdiction under MCL 722.1201(1)(a).  See also MCL 722.1102(g) (" 'Home state' means the state in which a child lived with a parent . . . for at least 6 consecutive months immediately before the commencement of a child-custody proceeding.").